# Exhibit B

# DEPOSIT ACCOUNT CONTROL AGREEMENT
(Exclusive Control)

This DEPOSIT ACCOUNT CONTROL AGREEMENT (as amended from time to time, this "<u>Agreement</u>") is dated as of May 22, 2019, and entered into by and among NORTHSTAR HEALTHCARE ACQUISITIONS, L.L.C., a Delaware limited liability company ("<u>Customer</u>"), COMPASS BANK d/b/a BBVA Compass ("<u>Depository Bank</u>"), and COMPASS BANK d/b/a BBVA Compass, as Super Priority Agent ("<u>Secured Party</u>").

Customer and Secured Party have advised Depository Bank that Customer has granted Secured Party a security interest in account numbers: <u>6772495038, 6772495356, 6772496123 and 6772496875</u> maintained by Customer with Depository Bank (collectively, the "<u>Specified Deposit Account</u>"), and Secured Party desires to perfect its security interest in the Specified Deposit Account and the Funds (as defined below).

**NOW, THEREFORE**, in consideration of the foregoing, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

**SECTION 1.**     **Control of Specified Deposit Account**.

(a)     Customer and Secured Party hereby notify Depository Bank of, and Depository Bank hereby acknowledges, the security interest granted by Customer to Secured Party in the Specified Deposit Account, the funds on deposit therein, any and all future deposits thereto, including any interest credited thereto (collectively, the "<u>Funds</u>"). The parties intend that this Agreement evidences Secured Party's control over the Specified Deposit Account in order to perfect Secured Party's security interest in the Specified Deposit Account and the Funds pursuant to Sections 9-104, 9-312, and 9-314 of the Uniform Commercial Code.

(b)     Each of the parties hereto agrees that Depository Bank shall (i) comply with instructions with respect to the disposition of Funds in the Specified Deposit Account ("<u>Disposition Instructions</u>") originated by Secured Party without further consent of Customer and (ii) disregard any Disposition Instructions originated by Customer.  Notwithstanding the foregoing, Depository Bank may (but shall not be obligated to) debit the Specified Deposit Account for any and all items (including, but not limited to, checks, drafts, Automatic Clearinghouse (ACH) transactions, foreign exchange transactions or wire transfers) that were originated by Customer prior to the effectiveness of this Agreement.

(c)     Notwithstanding any provision of this Agreement to the contrary, unless Depository Bank separately agrees in writing, Depository Bank shall not be obligated to disburse any Funds in the Specified Deposit Account in response to Disposition Instructions by Secured Party other than by wire transfer or inter-account transfer.

(d)     To the extent items deposited to the Specified Deposit Account have been received in one or more post office lockboxes maintained for Customer by Depository Bank (each, a "<u>Lockbox</u>") and processed by Depository Bank for deposit (collectively, "<u>Remittances</u>"), (i) Customer and Secured Party hereby notify Depository Bank of, and Depository Bank hereby acknowledges, the security interest granted by Customer to Secured Party pursuant to one or more security agreements in the Lockbox and all Remittances, and (ii) the parties hereto agree that "Disposition Instructions" as defined herein shall include any instructions by Secured Party to Depository Bank regarding the receipt, processing or deposit of Remittances.

**SECTION 2.**     **Certain Other Agreements.**

(a)     If any conflict between this Agreement and any other agreement between Depository Bank and Customer arises, then the terms of this Agreement will prevail.

(b)     Notwithstanding the provisions of this Agreement to the contrary, as a condition to disbursing any Funds in response to Disposition Instructions by Secured Party, Depository Bank may require such documentation as Depository Bank may reasonably request to establish the identity and authority of the individuals issuing Disposition Instructions on behalf of Secured Party (provided, however, that Depository Bank shall not be obligated to request any such documentation and shall incur no liability if it does not do so).

(c) Depository Bank will have no fiduciary duties under this Agreement to any other party hereto, whether as trustee, agent, bailee or otherwise. Depository Bank will have no duties to Secured Party except as expressly set forth in this Agreement. Depository Bank will have no duty to inquire into or determine (i) the existence or enforceability of Customer's obligations to Secured Party, or (ii) whether, under any separate agreement between Customer and Secured Party, (A) Customer's obligations to Secured Party are in default or (B) Secured Party may originate any Disposition Instruction. Depository Bank shall be fully protected in acting or refraining from acting in good faith without investigation on any request, notice, direction or instruction purporting to be from Secured Party (including, without limitation, any Disposition Instructions) and any such request, notice, direction or instruction shall be deemed to be from Secured Party. Depository Bank may follow Disposition Instructions by Secured Party even if the result thereof is that Depository Bank dishonors items presented for payment from the Specified Deposit Account, and Depository Bank will have no liability to Customer or Secured Party for the wrongful dishonor of such items in following such Disposition Instructions. Depository Bank shall not be liable to Customer or Secured Party for claims, losses, liabilities or damages suffered or incurred by Customer or Secured Party arising out of or in connection with this Agreement except to the extent such claims, losses, liabilities and damages directly result from Depository Bank's gross negligence or willful misconduct. In no event will Depository Bank be liable to Customer or Secured Party for any indirect, special, consequential or punitive damages.

**SECTION 3.    Returned Items; Fees and Expenses of Depository Bank.**

(a) Depository Bank hereby subordinates, to the security interest granted by Customer to Secured Party in the Specified Deposit Account and the Funds, any security interest, lien or right of offset held by Depository Bank on or against the Specified Deposit Account or the Funds and will not charge or debit, or exercise any security interest, lien or right of offset against the Specified Deposit Account or the Funds, in each case except with respect to (i) any checks, drafts, wire transfers, ACH entries or other items deposited in or credited to the Specified Deposit Account that are returned for any reason or otherwise not collected, (ii) any adjustments or corrections of any posting or encoding errors, (iii) overdrafts on the Specified Deposit Account, and (iv) all service charges, commissions, expenses, fees and other items ordinarily chargeable to the Specified Deposit Account (the items described in the foregoing clauses (i) through (iv), collectively, "Charges").

(b) Customer agrees to pay Depository Bank the amount of any Charges upon demand. Secured Party agrees to pay Depository Bank the amount of all unpaid Charges for which there were insufficient Funds in the Specified Deposit Account to satisfy the amount thereof, to the extent of the Funds that Depository Bank transferred to or at the direction of Secured Party.

**SECTION 4.    Indemnity**. Customer agrees to indemnify and hold Depository Bank and its affiliates and each of its and their respective officers, directors, employees, affiliates, agents and attorneys (each an "Indemnified Person") harmless from and against any and all liabilities, claims, demands, losses, damages, costs and expenses of any kind or nature whatsoever arising out of or in connection with this Agreement or the Specified Deposit Account (including, but not limited to, the reasonable fees and expenses of counsel in connection with any investigative, administrative, or judicial proceeding, whether or not any Indemnified Person shall be designated a party thereto) (all of the foregoing liabilities, claims, demands, losses, damages, costs and expenses, collectively, "Indemnified Items") EVEN IF SUCH INDEMNIFIED ITEM ACTUALLY OR ALLEGEDLY ARISES FROM THE ORDINARY NEGLIGENCE OF ANY INDEMNIFIED PERSON; provided that Customer shall have no obligation to any Indemnified Person under this Section with respect to any Indemnified Item arising from the gross negligence or willful misconduct of such Indemnified Person. Secured Party agrees to indemnify and hold each Indemnified Person harmless from and against any and all Indemnified Items arising out of or in connection with Depository Bank's compliance with any request, notice, direction or instruction given by Secured Party with respect to the Specified Deposit Account, EVEN IF SUCH INDEMNIFIED ITEM ACTUALLY OR ALLEGEDLY ARISES FROM THE ORDINARY NEGLIGENCE OF ANY INDEMNIFIED PERSON; provided that Secured Party shall have no obligation to any Indemnified Person under this Section with respect to any Indemnified Item arising from the gross negligence or willful misconduct of such Indemnified Person.

**SECTION 5.    Account Information**. Customer hereby instructs Depository Bank, and Depository Bank agrees, to furnish to Secured Party, upon request of Secured Party, bank statements with respect to the Specified Deposit Account that are customarily provided to customers of Depository Bank at the times such statements are normally provided to customers of Depository Bank, through the normal method of transmission, including United States mail, with a copy to Customer, at Customer's expense.

**SECTION 6.**   **Modification**.  No amendment of this Agreement shall be effective unless the same shall be in writing and signed by each of the parties hereto.  No waiver of any rights of any party hereunder shall be effective unless the same shall be in writing and signed by such party.  Any such amendment or waiver shall be effective only in the specific instance and for the purpose for which given.

**SECTION 7.**   **Notices**.  Any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, or sent by facsimile or United States mail or courier service and shall be deemed effective when delivered in person or by courier service, upon receipt of facsimile, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed; provided that notices to Depository Bank shall not be effective until and unless actually received.  For the purposes hereof, the address(es) of each party hereto shall be as set forth under such party's name on the signature pages hereof or such other address(es) as shall be designated by such party in a written notice delivered to the other parties hereto.  "Business Day" means any day other than Saturday, Sunday or any other day on which Depository Bank is or is authorized or required by law to be closed.

**SECTION 8.**   **Governing Law**.  This Agreement and the rights and obligations of the parties hereunder shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the state in which Depository Bank maintains the Specified Deposit Account, without regard to conflicts of laws principles that would require application of another law.

**SECTION 9.**   **JURY WAIVER**.  ALL PARTIES HERETO HEREBY WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR IN CONNECTION WITH THE SPECIFIED DEPOSIT ACCOUNT OR THIS AGREEMENT.

**SECTION 10.**   **Successors and Assigns**.  This Agreement shall bind and benefit the parties hereto and their respective successors and assigns; provided that Customer may not assign this Agreement without the written consent of Secured Party and Depository Bank, and Secured Party may not assign this Agreement without the written consent of Depository Bank.

**SECTION 11.**   **Execution in Counterparts**.  This Agreement may be executed in any number of counterparts, and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts taken together shall constitute but one and the same instrument.  Delivery of any executed counterpart signature page of this Agreement by facsimile or electronic transmission (".pdf") will be effective as delivery of a manually executed counterpart of this Agreement.  Signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

**SECTION 12.**   **Termination**.  This Agreement shall terminate upon Depository Bank's receipt of a written notice from Secured Party referencing this Agreement and stating that this Agreement is terminated pursuant to this Section.  Depository Bank may terminate this Agreement upon thirty (30) calendar days' prior written notice to the other parties hereto; provided that Depository Bank may terminate this Agreement upon ten (10) calendar days' prior written notice to other parties hereto upon a breach by Secured Party or Customer of this Agreement or any of the documentation governing the Specified Deposit Account.  The provisions of Section 2(c), 3(b) and 4 shall survive any termination of this Agreement.

**SECTION 13.**   **Rules of Construction**.  The section headings in this Agreement are inserted for convenience of reference only and shall not be considered a part of this Agreement for any other purpose or be given any substantive effect.  The words "herein", "hereof", and "hereunder" and other words of similar import in this Agreement refer to this Agreement as a whole, and not to any particular Section or clause contained in this Agreement.  Any provision of this Agreement which is deemed unenforceable or invalid in any jurisdiction will not affect the enforceability or validity of the remaining provisions of this Agreement or the same provision in any other jurisdiction.  This Agreement represents the entire and integrated agreement among the parties hereto and supersedes all prior negotiations, representations or agreements, either written or oral, with respect to the matters addressed herein.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be duly executed by their duly authorized agents as of the day and year first above written.

**CUSTOMER:**

NORTHSTAR HEALTHCARE ACQUISITIONS, L.L.C.

By: _____
Name: Daniel R. Wiggins
Title: CRO

Notice Address:

11700 Katy Freeway, Suite 300
Houston, TX 77079

CUSTOMER SIGNATURE PAGE TO
DEPOSIT ACCOUNT CONTROL
AGREEMENT (EXCLUSIVE CONTROL)

**DEPOSITORY BANK:**

**COMPASS BANK**

By: _____
    Name: Jon McCurdy
    Title:  Sr. Vice President

Notice Address:

2200 Post Oak Blvd
Fl. 20
Houston, TX 77056-4700

**and**

BBVA Compass
15 South 20th Street, Suite 1802
Birmingham AL 35233
Attention: Legal Department – Commercial

Email: bbvacdaca.group@bbva.com

**SECURED PARTY:**

**COMPASS BANK d/b/a BBVA Compass, as Super Priority Agent**

By: _____
    Name: Jon McCurdy
    Title: Sr. Vice President

Notice Address:

2200 Post Oak Blvd
Fl. 20
Houston, TX 77056-4700
Attn: ID Bovejo